208-1186 Riggs Construction v. Gov. May it please the Court, good morning, Your Honors. John O'Grady on behalf of the Plaintiff, Riggs Construction. The main issue I'd like to address today is the textbook, a hornbook example of the evidentiary error that the arbitrator committed by specifically relying on a causation opinion that was not in evidence. It was a causation opinion in the narrative report of Dr. Gauthier, G-A-U-T-H-I-E-R. And the arbitrator relied on it and actually referred to that causation opinion three times in her arbitration decision, even though that opinion was not admitted into evidence. This was a December 16, 2006, narrative report by Dr. Gauthier. He did provide a causation opinion, but the defendant withdrew that letter from the medical records, and he also specifically said that that causation opinion was not being offered for the truth of the matter asserted. In spite of this, the arbitrator, as I said, made findings that clearly relied on that causation opinion. And the opinion, the causation opinion is nowhere else in the evidence, and the arbitration decision should not have been based on a causation opinion that was not in evidence. Although the commission did find something to the effect that the error was de minimis or irrelevant, this was not an error that could be rectified or explained away by. Tying your argument into the facts, it's clear that the claimant had a serious accident back in August 15, 2006. Correct? Yes. It goes off the road. Nobody disputes there was an accident. Correct. And there was TTV paid for a certain period. There were some medical bills paid. But when the need for a second IME, a repeat IME, arose, and when there was an off work slip that it had expired, the respondent, the plaintiff, was well within their rights to ask for or to suspend TTV. When was the second Section 12 exam requested? That was, I believe it was requested a few weeks before the actual 19B hearing. Do you know the date? I don't know. Do you know the month or year? Oh, sure. Well, it was late 2006. And it occurred that there was a need for a second repeat IME when? It would have been in December of 2006? Yes, Your Honors. Yes, Your Honor. When did you cut off the payments? October 16, 2006. October 16, yeah. So it has nothing to do with the second request. It has nothing to do with the second request for the IME. Right. But part of what I was referring to in my argument was the fact that penalties and fees also should not have been issued. Well, we're asking you the question. Why did you cut off the TTD? Because there was no causal connection here. There wasn't any. Who said so? Who said so? You didn't see Betzelos for the first time until December 11, 2006, which came after your cutting off the TTD. What did you have in your possession that allowed you to cut this TTD off? There was a serious intervening accident. The original work accident here was the plaintiff, excuse me, the petitioner running his truck into a house. Eight days later, there was a serious intervening accident of pretty much the same nature, where the petitioner, again, crashed his truck. He said nobody was hurt, neither he nor his son were hurt. What evidence did you have that someone was hurt? Was there any medical record that someone was hurt? As far as the son being hurt, no. No, but him being hurt. Was there a medical record suggesting he was hurt in the second accident? Your Honor, I don't know if we introduced the medical records from the second accident or obtained them. You were hit with penalties because you cut off the TTD in October. He never even saw Betzelos, so Betzelos couldn't give you his opinion until December the 11th of 06. The second request for an IME was for February the 8th of 07, and it came after Betzelos' first opinion. So we're back to the question of what basis did you have to cut off this man's TTD? You had nothing. There's absolutely no medical record in the file that suggests he was injured in the second accident. He said he wasn't. He said his son wasn't. Your whole basis was because the guardrail on the truck had to be replaced? Your Honor, the second accident was just eight days later. I don't care if it was 10 minutes later. If he wasn't hurt, if you have no evidence that he was hurt, how can you cut off the man's TTD? We know he was hurt in the first accident. Here's where this comes down to be very blunt. Yes. You have to be arguing then of necessity in light of Justice Hoffman's questions that the mere fact, the mere fact he had an accident eight days later entitles you to cut off TTD. Where is there any law that supports the mere fact there's another accident, unconnected by any other testimony, medical or otherwise, connecting it back, you know, to the accident or aggravating the condition that allows you to cut it off merely because he had an accident? What authority can you hang your hat? That wasn't just the – that wasn't the only basis for cutting off TTD. Okay. Well, let's – because you said the accident was. So now – No, it wasn't the only basis. All right. Because there was – there was insufficient off-work slips, insufficient, you know, medical excuses or medical slips from the doctors. Petitioner, the defendant, had not been given a valid off-work slip since October 27, 2006. Wait a minute. October 27, 2006 is after you cut off the TTD. You cut it off on October the 16th. Yes, Your Honor. Well, I'm asking what they are. You're not giving me an answer. You're telling me about an accident with no evidence that he was hurt. You're telling me that after October 27th, he didn't have a proper off-work slip, but you cut it off 9 days earlier, or 11 days earlier, pardon me. So what else is there? Well, Your Honor, I think the question should be, what the arbitrator had to – what evidence she had before her to decide whether – You only have to prove the justification for cutting it off. Tell us what you submitted. That's your burden. Well, it – It's not your burden. Well, at trial, at the arbitration hearing, or at the 19B hearing, it is Petitioner's burden. No, no. Penalties, it's not. Penalties, it's not. Penalties is your burden. What's your justification? The arbitrator relying on a causation opinion that was not in evidence. But that took place after you cut off his TTD. Well, Your Honor, the issue, at least with penalties and fees, is what the arbitrator had before her and what evidence she relied on. So I know what you're saying. If we affirm causation, we necessarily affirm on penalties. If we reverse on causation, we reverse on penalties too. No. It's not true because there's other reasons why the TTD suspension was – Well, just tell us what they are. I keep asking that question. You don't answer me. You won't give me an answer. The accident, but there's no evidence he was hurt. Couldn't be Betzelos's opinion because you cut it off in October. You never got the opinion until December. You never saw him. Well, Your Honor, it's not just one issue as far as penalties and fees. There was some sort of diagnosis of depression that we know was preexisting, and the petitioner, I believe, even admitted that he had preexisting depression. But for some reason, the arbitrator found that it was caused – that the accident caused that depression. And that definitely should not have been relied on by the arbitrator in awarding the penalties and fees as far as the medical. As far as medical expenses, as far as that award. So based on the fact that there was evidence that was improperly relied on, causation opinion, that was not in evidence, and based on the fact that penalties and fees were not warranted, we would ask that the circuit court be reversed. Thank you, counsel. We will have time now for counsel, please. May it please the Court. Counsel, my name is Fred Glassman, and I'm the attorney for Tom Bowe, who's the affilee in this case. It's actually worse than what's before. Ramsfield never paid any TTA in this case, ever. There was no cutoff. There was no pay. There was never any explanation as to why I wasn't paid. I never received any IME report from Dr. Besseros until the morning of trial, which was in February of 2007. Okay? This is a situation in which, when we use words like bad faith, vexatious, and egregious, this is the case in which those terms apply. My client was injured. There are multiple off-work slips that were offered. There are letters that were sent to the insurance company saying why my client should be off work, why he should receive TTD, and there was never any explanation or medical opinion as to why my client should be returned to work. Not only that, in their argument that my client shouldn't be entitled to workers' comp because he wouldn't follow through with medical treatment, it was workers' comp that was denying the medical treatment that my client needed, which was the MRI of the lower extremities to determine what type of orthopedic injuries. I'm not going to go into a bunch of detail. I think my brief pretty much speaks for itself regarding that. Well, the penalties were calculated on the TTD that wasn't paid after October 16th. Correct. The TTD that we were claiming was from October 16th, the first date that he was authorized off work, through the date of the hearing in February of 2007. Okay. So that's the period of TTD. He actually returned to work for his employer for a couple of weeks after the injury while he was, again, in medical treatment. And then when he saw the orthopedic doctor who stated specifically, and this is not something that was withdrawn, this was right in there, that he felt that this was consistent with the Motor Vehicle Acts of August 15th, 2006, there was a report from Dr. Gauthier, not the December one, which I withdrew for the purposes of causation, but in the doctor's regular records, which were not objected to, which specifically states this is, in fact, I think the words are by the doctor was firmly believe that his injuries are a result of the August 15th, 2006 accident. As the commission noted, the arbitrator did not necessarily rely on anything from that December 16th note, other than that provides that they did have notice on multiple occasions, at least once in December of 2006, that he was still off work, he still needed treatment, and they were seeking approval. What do you make of the facts of the second accident that counsel's hanging his head? Well, it's clear. He had an accident, and with no medical treatment, he said he wasn't hurt. There was no visit to the hospital afterwards where he said, I was in an accident, I got hurt. His son didn't seek any treatment. They had, at that time, their IME doctor, who saw him in December, months afterwards was aware of it. Again, that report was not introduced into evidence at trial. If it was, maybe that doctor wouldn't even have said anything about it either. In other words, there's no evidence. Of any injuries at all? Of any injuries at all, from anybody. So simply put, we believe that the decision, not only with respect to causation and TTD, but also penalties should be strongly affirmed in this case. Thank you. Am I reading this correctly, Dr. Gauthier prescribed a pain medication called Narco? Narco, I think is the name. Narco. Yes. Okay, not Narco. Yes, I would like it. Yeah. Thank you, Counsel. Roberto, please. Thank you, Counsel. Court will take the matter under advisory for disposition.